# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RSK ENTERPRISES, LLC, | |
| Plaintiff, | Case No. 17-cv-02941 |
| v. | |
| COMCAST SPECTACOR, L.P., GLOBAL SPECTRUM, L.P. d/b/a SPECTRA VENUE MANAGEMENT, and BRIAN MARTIN, individually, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff RSK Enterprises brings various claims against Defendants Comcast Spectacor, Global Spectrum, and Brian Martin arising from a musical performance that Plaintiff arranged and for which Plaintiff alleges it was not fully paid. [30]. Plaintiff asserts the following claims against all defendants: unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125 *et seq*. (Count I); breach of contract (Count II); unjust enrichment (Count III); breach of fiduciary duty (Count IV); fraud in the inducement (Count V); and deceptive practices (Count VI). *Id*. Martin moved to dismiss all claims against him for lack of personal jurisdiction [36], and Comcast Spectacor and Global Spectrum moved to dismiss Counts IV–VI, [37]. As explained below, this Court grants both motions.

1

I.  **Background**[1]

Plaintiff RSK Enterprises is a Delaware limited liability company with its principal place of business in Chicago, Illinois. [30] ¶ 7. Plaintiff works exclusively with Robert S. Kelly, who sings and produces records under the name R. Kelly, and contracts out Kelly's performances. *Id.* ¶ 20. Plaintiff is also the exclusive licensee for the registered trademark "R. KELLY," with Registration Number 2,638,246. *Id.* ¶ 21; [30-1]. On or around January 26, 2017, Plaintiff or its agents accepted an offer for Kelly to perform at the Macon Centreplex in Macon, Georgia, on February 12, 2017 (the Performance). [30] ¶ 33. The Performance led to this dispute.

Comcast Spectacor (Spectacor) is a Pennsylvania limited partnership that manages performance venues and has its principal place of business in Philadelphia, Pennsylvania. *Id.* ¶¶ 8, 9. Defendant Global Spectrum, d/b/a Spectra Venue Management (Global), is a Delaware limited partnership with its principal place of business in Philadelphia, which contracts and hosts entertainment events. *Id.* ¶¶ 10, 11, 22. Spectacor controls and manages Global. *Id.* ¶ 12. Together, Spectacor and Global contract and host performances at the Macon Centreplex. *Id.* ¶ 23. Martin, a Georgia resident, works for Spectacor and Global as the Assistant General Manager of the Centreplex. *Id.* ¶¶ 13–15; [30-3] at 2. Defendants

---

[1] The Court draws facts from the amended complaint, [19], and the exhibits attached to it, *see Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002). This Court also takes judicial notice of other pleadings in this case, *see* Fed. R. Evid. 201(b); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997), though it does not assume the truth of the facts asserted in those pleadings, *see Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, No. 06-c-1661, 2007 WL 853968, at *4 (N.D. Ill. Mar. 15, 2007).

collectively manage the Centreplex, including its social media accounts. [30] ¶¶ 16, 25.

On or around December 31, 2016, Defendants began advertising a Kelly performance on the Centreplex's Facebook page, using the R. Kelly mark. *Id.* ¶ 25–26. They used the mark on the Centreplex's Facebook page through July 2017, despite the fact that Plaintiff, the mark's exclusive licensee, never granted Defendants the right to use the mark. *Id.* ¶¶ 26–28.

Plaintiff agreed to the Performance on or around January 26, 2017. *Id.* ¶ 33. Plaintiff does not specify who made the offer to perform that Plaintiff accepted on January 26, and does not allege that this agreement was with Defendants. *See id.* From the pleadings and exhibits, it appears that Real Talent Media Group, or its agent Romel Murphy, coordinated this initial agreement, including securing the Centreplex as a venue for the Performance. *See* [30-3] at 2; [36-1].

Defendants control the box office at the Centreplex, and communicated with Plaintiff about payment for the performance. [30] ¶ 24; [30-3]. Plaintiff had agreed to be paid for the Performance in two installments: $100,000 as an immediate initial deposit, and $100,000 just prior to the Performance. [30] ¶ 34. Because the Performance was scheduled for February 12, a Sunday, the parties agreed that Defendants would hold onto the second payment and wire it to Plaintiff on Monday, February 13, the next business day after the Performance. *See id.* ¶¶ 35, 38.

In an email exchange dated January 26, 2017, Murphy emailed Martin to connect him with Kelly's tour manager, Courtney Carter, and to confirm the

3

agreement that "a $100,000 wire" would "go out to R. Kelly on Monday following the show." [30-3] at 2. Martin responded: "Thanks Romel. Courtney – Copying Brenda and Jen on this email as well. They will be your contacts to advance the show. Look forward to a successful show! Brian." [30-3] at 2. Carter replied with Plaintiff's wire information that same day. *Id.* at 1.

The Performance took place as planned on February 12. *Id.* ¶¶ 40–41. Plaintiff never received the second installment of $100,000. *Id.* ¶ 42. Plaintiff sued Defendants in April 2017. [1]. Plaintiff filed its second amended complaint in July 2017 [30], and Defendants moved to dismiss, [36, 37]. Martin seeks to dismiss all claims against him for lack of personal jurisdiction [36], while Spectacor and Global seek to dismiss Counts IV–VI for failure to state a claim, [37].

## II. Legal Standard

When a defendant moves to dismiss a claim under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff has the burden of proving jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The district court must hold an evidentiary hearing if any material facts are disputed; otherwise, the court need only determine that the plaintiff has made out "a *prima facie* case of personal jurisdiction" based upon the parties' written submissions. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In considering the parties' written submissions, this Court resolves factual disputes in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A motion to dismiss does not test the merits of a case. *Autry v. Nw. Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998).

To survive a motion to dismiss, a complaint must first provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating a complaint, this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in

5

the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, automatically accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Count V of Plaintiff's amended complaint, alleging fraud in the inducement, must also meet Rule 9(b)'s heightened pleading requirements. Rule 9(b) demands that claimants alleging fraud "state with particularity the circumstances constituting fraud." Particularity requires that plaintiffs "describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted). For example, if the alleged fraud involves misrepresentation, the plaintiff must state who made "the misrepresentation, the time, place, and content of the misrepresentation, and [how] the misrepresentation was communicated." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014). Although different cases require different levels of detail for a complaint to satisfy Rule 9(b), *Pirelli*, 631 F.3d at 442, plaintiffs must provide "precision and some measure of substantiation," *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted).

### III. Analysis

#### A. Defendant Martin

Martin moves to dismiss the claims against him for lack of personal jurisdiction. [36]. Plaintiff's only federal claim alleges a violation of the Lanham

Act (Count I), which does not "have a special federal rule for personal jurisdiction," so this Court looks "to the law of the forum for the governing rule." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014).

A district court "sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Research*, 338 F.3d at 779. Illinois courts have personal jurisdiction over a nonresident when the Illinois long-arm statute authorizes it, and when the federal constitution permits it. *Hyatt*, 302 F.3d at 713. Illinois' long-arm statute allows courts to exercise personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Thus, this Court may focus on the federal constitutional inquiry because the "state statutory and federal constitutional requirements merge." *Id*. Following the federal standard, this Court may exercise personal jurisdiction over nonresidents only when they have "certain minimum contacts" with Illinois such that litigating the case here "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

There are two types of personal jurisdiction. General jurisdiction exists when the party's affiliations with Illinois "are so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014) (internal quotation marks omitted). Specific jurisdiction depends upon the

facts of the case, and exists where the defendant has "purposefully directed" his activities at residents of the forum state and where "the litigation results from alleged injuries that arise out of or relate to those activities," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotation marks omitted); *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015).

Because Martin has not asserted that this Court may exercise general jurisdiction over Defendants, this Court considers "only the propriety of specific jurisdiction." *Hyatt*, 302 F.3d at 713. It is therefore Plaintiff's burden to show that: (1) Martin has "purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 700, 702 (7th Cir. 2010) (citing *Burger King*, 471 U.S. at 472); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

Plaintiff's case for personal jurisdiction over Martin rests solely upon the following allegations: that Martin "negotiated and executed a contract for RSK's services"; that the Defendants collectively agreed to wire the second payment for the Performance to RSK; and that Martin participated in managing the Centreplex's social media accounts, which displayed the R. Kelly mark without license to do so. [30] ¶¶ 25–30, 39; [38] at 1. The first of these allegations does not appear in the Complaint; rather, Plaintiff's brief cites Martin's affidavit, which says no such thing. Rather, Martin states that he "negotiated and executed a contract with Real

8

Talent Media Group, LLC to, in part, hold and present R. Kelly for a music concert" at the Macon Centreplex. [36-1]. Thus, Martin's affidavit shows only that he negotiated with a third party. Plaintiff also alleges, however, that Defendants collectively entered into an agreement with Plaintiff regarding the payment of the second installment, [30] ¶¶ 38–39, and, at this point in the proceedings, this Court accepts that allegation as true, *see Purdue Research*, 338 F.3d at 782.

In short, Plaintiff alleges that personal jurisdiction over Martin exists because Martin breached an agreement with Plaintiff by failing to wire the second installment of $100,000, and because Martin helped manage the social media accounts that used the R. Kelly mark without a license in 2016 and 2017.

An "individual's contract with an out-of-state party" cannot, on its own, "establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478. Thus, Martin's participation in the agreement to wire the second installment, without more, cannot establish specific jurisdiction. The question becomes whether the contract was merely "an intermediate step" in a more substantial relationship with the forum state, which may develop through "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. Such factors may demonstrate that the defendant "*purposefully* established minimum contacts within the forum"—the driving inquiry for personal jurisdiction. *Id*. Overall, this Court must ask "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).

9

Here, the purported agreement regarding Plaintiff's payment does not show that Martin has a meaningful connection to this forum. The amended complaint does not include the full agreement, although Exhibit C—containing the email exchange setting out the alleged terms of the agreement—indicates that some agreement was reached that R. Kelly would perform on February 12, and that Defendants would wire $100,000 to Plaintiff on February 13. *See* [30-3]. This agreement contemplates a single performance in Macon, Georgia, necessitating a single fee (albeit in two installments); it in no way establishes any "continuing relationships and obligations" between the parties. *Cf. Burger King*, 471 U.S. at 473. Nor does the parties' course of dealing, which the Complaint depicts as consisting solely of a few emails regarding the payment agreement, support such an inference. *Cf. id.* at 479–80 (defendant entered a "carefully structured 20-year" contractual relationship in the forum state); *see also Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 763 (7th Cir. 2008) (distinguishing a contract for a "discrete task" from an ongoing service contract, and noting that the former did not confer personal jurisdiction). Additionally, merely wiring payments from a nonresident to a resident, pursuant to a contract, cannot establish personal jurisdiction in the resident's home forum. *See Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994); *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596, 604 (7th Cir. 1979).

Finally, Martin's involvement with the Centreplex's social media accounts fails to show that he "targeted" Illinois, and does not establish minimum contacts.

10

*Advanced Tactical*, 751 F.3d at 802. The Seventh Circuit instructs courts to take care "in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); *see also Am. Bridal & Prom Indus. Ass'n, Inc. v. Partnerships and Unincorporated Ass'ns, et. al.*, 192 F. Supp. 3d 924, 934 (N.D. Ill. 2016); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1051 (N.D. Ill. 2015). Because most websites are accessible anywhere in the world, internet activity only provides a basis for personal jurisdiction if a defendant somehow targets "the forum state's market." *be2 LLC*, 642 F.3d at 559. Evidence of targeting can include intensive advertising resulting in "hundreds of thousands of customers" in the forum state, or other significant interactions between the defendant and the forum. *Id.* (citing *uBid, Inc.*, 623 F.3d at 428–29). Plaintiff alleges no such targeting or interactions here. Additionally, since the events at the Centreplex occur in Macon, Georgia, the relevant social media efforts ostensibly target Georgia area residents.

In short, none of Martin's alleged actions show that he "deliberately" undertook "significant activities" within Illinois, or "created continuing obligations between himself and residents of the forum." *Burger King*, 471 U.S. at 475–76.

Plaintiff errs in relying upon its own contacts with Illinois to establish personal jurisdiction over Martin. *See, e.g.*, [38] at 4. The Supreme Court and the Seventh Circuit have warned that neither the plaintiff's contacts with the forum nor

11

the defendant's contacts with the plaintiff determine personal jurisdiction; rather, the relevant contacts are those "that the 'defendant *himself*' creates with the forum." *Advanced Tactical*, 751 F.3d at 801 (quoting *Burger King*, 471 U.S. at 475); *see also Walden*, 134 S. Ct. at 1122. Plaintiff does not allege any such contacts.

To the extent that any of Plaintiff's claims rely on tort theories rather than the breach of the payment agreement, this Court similarly concludes that Plaintiff fails to allege sufficient contacts between Martin and Illinois. If anything, the standard for exercising personal jurisdiction for tort claims is more demanding: the plaintiff must show "(1) intentional conduct (or 'intentional and allegedly tortious conduct'); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703. Plaintiff fails on the second prong, since, as discussed, nothing in the Complaint supports the idea that Martin "expressly" targeted Illinois with any of his conduct.

The only allegation potentially in dispute (although Plaintiff does not rely upon this fact in its brief) is Plaintiff's conclusory assertion that Martin "solicits, transacts and does business within the state of Illinois and has committed unlawful and tortious acts both within and outside the state of Illinois causing injury within Illinois." [30] ¶ 5. Martin denies this fact. [36-1]. Regardless of any dispute, this allegation is not a *material* factor in this Court's analysis for the simple reason that Plaintiff offers nothing connecting this assertion with the conduct giving rise to this suit. *See Hyatt*, 302 F.3d at 713 (requiring an evidentiary hearing only if "any

12

material facts are in dispute."). Specific jurisdiction only arises where "the defendant's *suit-related conduct*" creates "a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121 (emphasis added). Because the record fails to connect this general allegation to the dispute at hand, it does not provide a basis for specific jurisdiction. To the extent that Plaintiff's conclusory allegation rests on the more specific allegations about the failure of payment leading to this suit, this Court has already addressed those contentions and found them insufficient to confer personal jurisdiction over Martin.

Plaintiff also requests leave to conduct discovery into Martin's "contacts and purposeful availment to the law of the State of Illinois." [38] at 6–7. Courts may grant such requests only if the plaintiff makes out "a *prima facie* case for personal jurisdiction, which is required before it is allowed to conduct discovery." *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877 (7th Cir. 2006). Because Plaintiff fails to establish a prima facie case for personal jurisdiction over Martin, this Court denies its discovery request.

### B. Defendants Spectacor and Global

Spectacor and Global seek to dismiss Counts IV–VI of Plaintiff's complaint for failing to state a claim. [37]. This Court addresses each count in turn.

#### 1. Count IV: Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty under Illinois law, plaintiffs must allege: (1) a fiduciary duty on the part of the defendant; (2) a breach of that duty; (3) damages; and (4) that the breach proximately caused the damages. *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759,

13

768–69 (N.D. Ill. 2011). Spectacor and Global seek to dismiss this claim for Plaintiff's failure to allege facts showing that Defendants owed it a fiduciary duty. [37] at 3.

Particular relationships, "such as attorney-client and principal-agent, constitute fiduciary relationships as a matter of law." *Crichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 854 (Ill. App. Ct. 2005). Where, as here, no such relationship exists, a fiduciary duty can arise "as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Id.* Factors that may indicate the existence of such special circumstances include the parties' kinship; disparity in age, health, mental condition, education, or business experience between the parties; and "the extent to which the servient party entrusted his business affairs to the dominant party." *Id.* A contractual relationship or business transaction on its own does not establish a fiduciary relationship. *R.J. Mgmt. Co. v. SRLB Dev. Corp.*, 806 N.E. 2d 1074, 1083–84 (Ill. App. Ct. 2004). Generally, where parties "capable of handling their business affairs deal with each other at arm's length, and there is no evidence that the alleged fiduciary agreed to exercise its judgment on behalf of the alleged servient party," no fiduciary relationship exists. *Id.* (internal quotation marks omitted).

Here, Plaintiff asserts that it "entrusted Defendants to hold," and then wire, the second payment of $100,000 on its behalf. [30] ¶ 62, 63. Plaintiff alleges no facts that indicate that Defendants held "dominance and influence" over it. *Cf.*

14

*Benson v. Stafford*, 941 N.E.2d 386, 398 (Ill. App. Ct. 2010). The mere fact that Defendants possessed the funds for the second payment in no way distinguishes this agreement from any ordinary contract between sophisticated entities. Rather, Plaintiff simply claims that Defendants did not perform their obligations under an arm's length bargain, which does not create a fiduciary relationship. *See Pearson*, 790 F. Supp. 2d at 769; *see also Yokel v. Hite*, 809 N.E.2d 721, 707 (Ill. App. Ct. 2004) ("Where one party to a business contract trusts the other to do no more than fulfill its obligations under the contract, no fiduciary duty arises."). Count IV is dismissed as to Spectacor and Global.

### 2. Count V: Fraud in the Inducement

Count V of Plaintiff's amended complaint alleges fraud in the inducement. [30] at 13. To state a cause of action for fraudulent inducement, a form of common-law fraud, a plaintiff must plead: "(1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287–88 (Ill. App. Ct. 2013) (citations omitted).

Here, Plaintiff alleges that the email exchange contained in Exhibit C—in which Murphy references the purported agreement regarding the second payment and Carter provides Plaintiff's wire information—contains the material false statement. [30] ¶ 71. That exhibit, however, contains only Murphy's reference to

15

an alleged agreement about the second payment, and does not show that Defendants made any statements of fact, false or otherwise. *See* [30-3].

To the extent that Plaintiff alleges that Exhibit C shows a false statement of material fact, and Exhibit C contains no such statement, this Court credits the exhibit itself over the amended complaint. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454–56 (7th Cir. 1998). This Court may credit an exhibit where it "contradicts allegations in the complaint to which it is attached," at least where the exhibit is key to the basis of the claim asserted, and is read as "what the complaint says it is"; for example, where a plaintiff attaches a contract to a complaint about a contract dispute. *Id.* (internal quotation marks omitted). That is the case here: Plaintiff attached Exhibit C as evidence of the alleged false statement. But Exhibit C contains no such statement, meaning that Plaintiff lacks a key element of its fraudulent inducement claim.

In any event, Plaintiff's amended complaint lacks the particularity required to satisfy Rule 9(b). Rule 9(b) requires plaintiffs to describe "the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (internal quotation marks omitted). The rule is intended in part "to force the plaintiff to do more than the usual investigation before filing his complaint." *Id.* (internal quotation marks omitted). As a result, plaintiffs must plead facts "that make the allegation of fraud plausible"; conclusory allegations that a party intended to commit fraud—particularly absent any indication of how the plaintiff knows of such an intention—are insufficient. *See United States ex rel.*

16

*Grenadyor*, 772 F.3d at 1106. Plaintiff pleads no facts elevating its conclusory allegation of fraud to the plausible: Plaintiff offers no basis for its conclusory allegation that Defendants entered the payment agreement fraudulently, nor any indication of how Plaintiff would know of such fraud if it did exist. *See id.*; [30] ¶¶ 35–39. This Court dismisses Count V as to Spectacor and Global.

### 3. Count VI: Deceptive Practices

Count VI alleges deception, fraud, misrepresentation, and false promises by Defendants, based both upon their alleged breach of the agreement to wire the second payment to Plaintiff on February 13, and Defendants' alleged unlicensed use of the R. Kelly mark. *See* [30] ¶¶ 77–82, 83–86. Plaintiff does not allege its claim with sufficient clarity to satisfy either Federal Rule of Civil Procedure 8 or 9.

The caption for Count VI reads: "Illinois Consumer Fraud and Dececptive [sic] Practices Act (815 ILCS 505/2 et. seq.)." *Id.* at 14. The cited statute does not, however, align with that statutory title. 815 ILCS 505/2 sets out the Illinois Uniform Deceptive Trade Practices Act (ILDTPA). The Illinois Consumer Fraud and Deceptive Trade Practices Act (ILCFA), which Plaintiff may have intended to cite, is a different statute with different elements. *See* 815 ILCS 505/1; *see also Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 928, 929 (N.D. Ill. 2015) (analyzing claims under the two provisions separately).

Defendants moved to dismiss based upon their analysis of the ILCFA. [37] at 8. They have not addressed the ILDTPA. This Court cannot determine the basis of Plaintiff's claim from the defective allegations in the amended complaint, and it cannot expect Defendants to do so either. The result is that Plaintiff has failed to

17

provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), or give Defendants "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47). The Complaint thus lacks even "threadbare recitals of the elements of a cause of action," failing to identify what that cause is. *See Limestone*, 520 F.3d at 803. This Court dismisses Count VI as to Spectacor and Global.

### C. Leave to Replead

Federal Rule of Civil Procedure 15(a)(2) instructs district courts to freely give leave to amend "when justice so requires." Here, Plaintiff failed to make out a prima facie case of personal jurisdiction as to Martin, and granting Plaintiff leave to replead its claims against Martin would be futile. Thus, this Court does not grant such leave. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (district courts have broad discretion to deny leave to amend where amendment would be futile).

With respect to Plaintiff's claims against Spectacor and Global, however, this Court has no reason to deny Plaintiff leave to replead at this time. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). This is the first time this Court has addressed Plaintiff's claims, and Plaintiff should be afforded an opportunity to correct the deficiencies outlined here. Should any amended pleading show a similar lack of clarity, however, this Court may deny a future motion to amend the complaint. *See Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011).

## IV. Conclusion

This Court grants Martin's motion to dismiss for lack of personal jurisdiction, [36], with prejudice. This Court grants Spectacor and Global's motion to dismiss Counts IV–VI of the amended complaint, [37], but also gives Plaintiff leave to replead those counts.

The motion hearing previously set for 1/10/2018 at 9:45 a.m. in Courtroom 1203 is converted to a status hearing. All other dates and deadlines stand.

Dated: January 8, 2018

Entered:

_____
John Robert Blakey
United States District Judge